*596
 
 Ruggles, J., (dissenting.)
 

 This action is brought on a canal contractor’s bond to the people of this state, taken in pursuance of the statute passed April 10th, 1850, entitled “ An act to secure the payment of wages to laborers employed on the canals and other public works of this state.” The facts are stated in the special report of the referee.
 

 The first section of the act of 1850 makes it the duty of the officer having charge of the letting of any of the canals or other public works of this state to require and take, in addition to the bond required for the security of the state, a bond with sureties, “ conditioned that such contractor shall well and truly pay in full, at least once in each month, all laborers employed by him, in the mode specified in such contract.” . The defendants now insist that they are not liable on the bond because the plaintiff and his assignors were hired by Shippey, the sub-contractor, and therefore, as they contend, were not
 
 employed
 
 by Cromwell, the contractor, within the meaning and intent .of the statute.
 

 In construing a statute, courts must never lose sight of its object and intent. Statutes are to be expounded according to the ordinary sense of the words, unless such construction would be inconsistent with, or contrary to the declared or implied intention of the framers of the law, in which case the grammatical sense of the words may be modified, restricted or extended to meet the plain policy and purview of the act. But in such case the intent must be obvious ánd must be collected from the words of the act. Courts, will not attempt to mould the language of an act for the sake of an apparent convenience, and without the clearest evidence of a corresponding intention in the legislature. In interpreting the -law judges are to explore the intentions of the legislature, yet the construction to be put upon a statute must be such as is warranted by, or at least not repugnant to, the words of the act. Where the object of the legislature is plain and unequivocal, courts ought, without violence to the words, to adopt such a construction as will best effectuate the intentions of the lawgiver.
 
 (Dwarris on Statutes.
 
 582, 3,
 
 ed. of
 
 1848.) And where words are ambiguous,
 
 *597
 
 or where they are such as to admit of two senses, the courts will read and interpret them in that sense which will carry the manifest intention of the legislature into effect.
 
 (Dwarris,
 
 588.)
 

 The object and intent of the act in question are obvious, plain and unequivocal. They are expressly declared in the title of the act already recited; and every section and portion of the act relate to the object and purpose expressed in the title. Before the statute was passed, it had frequently happened that laborers who actually performed the work, were defrauded of their wages by the contractors. The object of the act was to remedy this evil. It may be so construed as to embrace the plaintiff’s case without the perversion or distortion of any of its language. The question arises upon the use in the statute of the words “ employed by him,” the contractor. They were in fact hired by Shippey. But
 
 “
 
 hiring” and ■ “ employing” are words of different meaning. To hire is to engage in service for a stipulated reward; as to hire a servant for a year, or laborers by the day or month: to engage a man to temporary service for wages. To employ is a word of more enlarged signification. A man hired to labor is employed, but a man may be employed in a work who is not hired. Materials are employed for building locks, but they are not hired ; and a man who does his own work or the work of another is employed in it, although he receives no wages. To employ, is to use as an instrument or . means of effecting an object. This is one of the senses in ' which the word is commonly and frequently used, and in that sense the sub-contractor and all his laborers were employed by Cromwell; they were used by Cromwell as the means by which he caused the work to be done ; although none of them, strictly speaking, were hired by him. We are bound to read and understand the words
 
 “
 
 employed by him,” used in the statute and in the bond, in that sense which will suppress the mischief and advance the remedy contemplated by the law. According to the legitimate import of the words of the first section, the plain
 
 *598
 
 tiff’s case is not only within the spirit of the law, but within its letter.
 

 But it is contended that the third section requires that we should give the act a different construction, and limit the liability of the defendant to the laborers actually hired by him, and who could recover against him on his contract of hiring. That .part of the third section referred to by the defendant’s counsel, is in these words: “ The bringing of a suit by one or more laborers upon such bond, shall not operate as a bar to bringing other suits thereon by any of the parties for whose benefit such bond was taken, and to whom such contractor shall be indebted for labor.”
 

 I am inclined to the opinion that Cromwell was legally indebted to the laborers, for work done upon his job. He was the contractor with the state. He was prohibited by his contract from underletting, but nevertheless he did underlet a part of the work to Shippey., This underletting was however concealed from the laborers. Cromwell retained a portion of the work to be done under his own direction and superintendence, and this must be presumed to have been so done. Cromwell received from the state the money the laborers earned. From the nature of the transaction and the course of the business, the fact of his being the contractor must have been known to the laborers ; and to all outward appearance Shippey was acting not as a sub-contractor, but as the agent of Cromwell in the prosecution of the work. Under these circumstances the laborers must be presumed to have dealt with Shippey, under the belief that he was Cromwell’s agent, although the hiring was in Shippey’s name. The contract between Shippey and the laborers was not in writing; and it does not appear that they gave exclusive credit to Shippey, the ostensible agent. Cromwell permitted the laborers to go on with their work under the supposition that they were entitled to look to him as Shippey’s principal. He misled them by concealing the fact that Shippey was a sub-contractor; and having done so, he would not be at liberty to set up . that
 
 *599
 
 fact as a defense to an action against him as Shippey’s principal, in an action for the laborers’ wages. I think therefore that he was indebted to the laborers hired by Shippey, within the meaning of the third section of the statute of 1850.
 

 But again, suppose the construction which the defendant puts upon the statute be so far correct, that in the absence of fraud, concealment or bad faith, the liability of the defendant on his bond would be limited to the laborers actually hired by him, there are further substantial reasons why he ought to be precluded from setting up the defense he relies on.
 

 The sub-letting and its concealment were not only a violation of his contract, but they were a fraud upon the state, and upon the laborers. The statute was intended for the protection of all the laborers upon the public works ; and the bond given in pursuance of it would have been an effectual protection to the plaintiff and his assignors, if this fraud had not been practiced. The sub-letting was a fraud upon the state, because it enabled the defendant, as contractor, to obtain money from the treasury to which he was not entitled. If the defendant’s construction of the statute be correct, it was the duty of the auditor of the canal department, immediately upon notice of the sub-letting, to withhold the payments for the work until the canal commissioner should consent to the sub-letting, and adopt the sub-contractor in lieu of the defendant; and in that event, still further to withhold payment, until the new contractor should give the security to the laborers required by the act of 1850. It is the duty of the state officers to give effect to this statute according to its manifest intent; and not to permit any contractor to escape from his liability on his bond to the laborers on his job. There is no proof that any of the state officers had notice of the sub-contract between Cromwell and Shippey ; and it is to be presumed that they had no such notice; because if they had they would in the course of their duty have withheld the payments to Cromwell; and a neglect of that duty is against legal presumption. If the fraud had not been practiced, the laborers would have had an un
 
 *600
 
 doubted remedy; and it is only through the instrumentality of this fraud that the defendant can make his defence available. Nothing is better established in the law than that a party shall not be permitted to allege his own fraud as the ground of an action or a defense. Cromwell should be precluded from setting it up. The case ought to stand on the same footing as if there had been no sub-contract, and as if the laborers had been hired by Cromwell. The judgment below ought to be affirmed.
 

 Edwards, J., concurred in the foregoing opinion.
 

 Judgment reversed.
 

 Mote.—In the case of Robertson against Bullions, reported at page 243, ante, Johnson, J. dissented from the second proposition stated in the close of the opinion of Selden J., but he concurred in the other propositions stated by Selden, J.
 

 [the REMAINDER OF DECEMBER CASES IN NEXT VOLUME.]